FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUN 17 2005
JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELIZABETH A. OSBURN            Plaintiff

v.      4:04CV00531 JMM/HDY

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration,           Defendant

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff, Elizabeth A. Osburn, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI), based on disability. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. Sultan v.

Barnhart, 368 F.3d 857, 863 (8th Cir. 2004); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

On her current application,[1] Plaintiff alleged disability based on back problems, pain in her feet and knees, high blood pressure, a thyroid disorder and depression. (Tr. 229) The Commissioner found that she was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Plaintiff had not been under a

---

[1] Plaintiff filed her first application for SSI in 1996. (Tr. 20) She was found disabled, but that disability ceased in October of 1998 due to excess family income. Id. She again filed in December of 1998; the claim was denied initially and not appealed. Id. An initial determination is binding unless the claimant requests reconsideration within the allowed time or the Social Security Administration revises the initial determination. 20 C.F.R. § 416.1405 (1999).

[2] The Hon. Edward M. Starr.

disability within the meaning of the Social Security Act at any time through January 21, 2004, the date of his decision.[3] (Tr. 32-33) On March 31, 2004, the Appeals Council received and considered additional argument and then denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 8-11) Plaintiff then filed her complaint initiating this appeal. (Docket #3)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

Plaintiff was 43 years old at the time of the hearing. (Tr. 562) She completed the tenth grade in school. (Tr. 212, 235, 562-63) She has no past relevant work. (Tr. 21, 29, 32)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b)(2004). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id.

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform

---

[3]Plaintiff's application had a protective filing date of April 26, 2002. (Tr. 193) SSI benefits are not payable for a period prior to the application. Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989). An applicant must be disabled during the pendency of his or her application. Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991). Therefore, the relevant time period for this case is *April 26, 2002, to January 21, 2004.

basic work activities, a "severe" impairment. Id., § 404.1520(c). If not, benefits are denied. Id.

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. Id., § 404.1520(d). If so, and the duration requirement is met, benefits are awarded. Id.

If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant medical and other evidence. Id., § 404.1520(e). This residual functional capacity assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. Id., § 404.1520(f). If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. Id., § 404.1520(g). If so, benefits are denied; if not, benefits are awarded. Id.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 31) He found that she had a "severe" impairment,[4] but that she did not have an impairment or combination of impairments that met or equaled a

---

[4] He found that the objective medical evidence showed that Plaintiff had obesity; probable fibromyalgia; major depressive disorder, recurrent, moderate and/or dysthymic disorder; dependedent personality disorder and histrionic features. (Tr. 21-22)

4

Listing. Id. He judged that her allegations regarding her limitations were not totally credible. Id.

The ALJ determined that Plaintiff retained the residual functional capacity for a significant range of light work. (Tr 32) He noted that she had no past relevant work. (Tr. 21, 29, 32) The ALJ correctly noted that, once Plaintiff was determined to have no past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her residual functional capacity, age, education and past work. (Tr. 30)

Based on the answers of the vocational expert witness in response to a series of hypothetical interrogatories, the ALJ found that there were a significant number of jobs in the economy which Plaintiff could perform, notwithstanding her limitations, for example, sales clerk, waitress, poultry production, cashier, assembler and hotel/motel housekeeper. (Tr. 32) Consequently, the ALJ concluded that Plaintiff was not disabled. Id.

Plaintiff makes several arguments in support of her request for reversal. The Court will consider them separately. First, Plaintiff contends that the ALJ failed to consider her impairments in combination. (Br. 18-22) A fair reading of the ALJ's opinion reveals that he discussed Plaintiff's impairments individually and in combination. He reached his decision only "[a]fter careful consideration of the entire record." (Tr. 31) He noted the shift in burden once Plaintiff showed she had no past relevant work because of her impairment<u>s</u>. (Tr. 30, emphasis added) He reached his residual functional capacity determination "based upon a careful review of the

5

evidence of record as a whole." (Tr. 29) Furthermore, the ALJ discussed Plaintiff's limitations of function, which are a cumulation of her impairments, at some length. Plaintiff's point is not well taken. See Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

Second, Plaintiff argues that the ALJ failed to properly evaluate her obesity. (Br. 22-25) Significantly, Plaintiff did not claim disability based on obesity in her application for benefits or at the administrative hearing. Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995). More importantly, there is no evidence in the record that Plaintiff's obesity imposed any limitations on her ability to work. Id.; see Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)(although treating doctors noted claimant was obese and should lose weight, none suggested obesity imposed additional work-related limitations, and claimant did not testify that obesity imposed additional restrictions). It is noteworthy that the plaintiff in Box was within 30 pounds of the weight which would have made him presumptively disabled under the (now deleted) Listing for obesity. In this case, plaintiff was at least 50 pounds[5] below the Listing level. Thus, she was less obese than the plaintiff in Box. Under the circumstances, the ALJ sufficiently discussed Plaintiff's

---

[5]During the relevant time period, her weight ranged from 200-216 pounds. (Tr. 363, 364, 371, 378, 384, 386, 391, 533, 537) Her height was 65-66 inches. (Tr. 363, 491) Under the old Listing 9.09, a woman with a height of 65 inches would need to weigh 266 pounds in order to meet the Listing; a woman 66 inches tall would need to weigh 274 pounds in order to meet the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Table II (1995). There were additional requirements to meet the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 9.09 (1995).

6

obesity.

Next, Plaintiff urges that the ALJ's credibility analysis was improper. (Br. 25-27) The ALJ evaluated Plaintiff's subjective complaints in light of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). (Tr. 24-29)

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).

There is little objective support in the record for Plaintiff's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. Richmond v. Shalala, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the inconsistencies in Plaintiff's statements, the lack of

7

medical evidence in support of Plaintiff's allegations, the type of medications taken, the effectiveness of her psychotropic medication when taken, the lack of treatment for significant periods of time, Plaintiff's daily activities, her poor work record, her functional capabilities and the lack of restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints. See Thomas v. Sullivan, 928 F.2d 255, 259-60 (8th Cir. 1991); Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989).

Plaintiff argues that the ALJ did not properly consider her inability to pay for medical treatment. (Br. 25, 26) Lack of financial resources may in some cases justify the failure to seek medical attention or follow prescribed treatment. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Such is not the case presented here. There is no evidence that Plaintiff told her physicians that she was unable to afford treatment. Id. It is for the ALJ in the first instance to determine Plaintiff's motivation for failing to follow prescribed treatment or seek medical attention. Id.

Plaintiff never testified that she could not afford her prescribed medications or treatment. She did testify that she could not afford to drive back and forth to Little Rock three times a week for counseling. (Tr. 567-68). However, there is no evidence that she mentioned that problem to her counselors, or tried to arrange her schedule to save trips or tried to arrange for counseling closer to home. She told Nancy J. Toombs, Ph.D, a consulting psychologist, that UAMS was providing her with sample medication for depression. (Tr. 358) She also told Dr. Toombs that she had been seen in the Psychiatric Department three or four times that year, but did not

8

return because they were wanting her to come in on a weekly basis. (Tr. 358-59) She further indicated to Dr. Toombs that she did not want to engage in any other mental health counseling. (Tr. 359)

Plaintiff also argues that her failure to seek treatment was also due to the fact that the majority of her impairments could not be significantly improved through treatment or medication, i.e., Raynaud's.[6] (Br. 26) Plaintiff was evaluated in April of 2002 by Ricardo Zuniga, M.D., F.A.C.R., Assistant Professor of Internal Medicine at the University of Arkansas for Medical Sciences. (Tr. 395-98) Her physical examination was "completely negative." (Tr. 397) He noted that she had taken Prednisone for approximately five years, stopping in 1979. (Tr. 395) Her Raynaud's "improved dramatically." Id. Plaintiff denied current episodes of Raynaud. Id. Dr. Zuniga thought that she needed only symptomatic treatment to avoid cold and did not need pharmacological intervention other than calcium channel blockers which were already indicated for her high blood pressure. (Tr. 397-98) Clearly, Dr. Zuniga's examination and evaluation directly contradict Plaintiff's argument that her Raynaud's could not be effectively treated.

Plaintiff also contends that the ALJ did not properly consider the testimony of her husband. (Br. 26) Smith v. Heckler, 735 F.2d 312 (8th Cir. 1984), directs consideration of testimony of Plaintiff's witnesses, but certainly does not mandate belief of such

---

[6]Raynaud's syndrome is an idiopathic paroxysmal bilateral cyanosis of the digits due to arterial and arteriolar contraction; it is caused by cold or emotion. PDR Medical Dictionary 1765 (2d ed. 2000).

9

testimony as credible. <u>Rautio v. Bowen</u>, 862 F.2d 176, 180 (8th Cir. 1988).

This is not a case, as were <u>Smith v. Heckler</u>, 735 F.2d 312 (8th Cir. 1984), and <u>Basinger v. Heckler</u>, 725 F.2d 1166 (8th Cir. 1984), where the ALJ ignored substantially uncontroverted subjective testimony of family members and others on a crucial issue.

> Where proof of a disability depends substantially upon subjective evidence, as in this case, a credibility determination is a critical factor in the Secretary's decision. Thus, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."

<u>Basinger</u>, 725 F.2d at 1170 (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Here, proof of disability did not depend substantially upon subjective evidence. Under the circumstances of this case, the ALJ satisfactorily set forth his credibility determination of Plaintiff's husband. (Tr. 29) See <u>Turley v. Sullivan</u>, 939 F.2d 524, 528 (8th Cir. 1991).

Next, Plaintiff contends that the ALJ erroneously interpreted her activities of daily living as indicia of a lack of disability and lack of credibility. (Br. 27) As the ALJ noted, Plaintiff indicated in 2002 that she fished and played video games (Tr. 239), activities which he observed were inconsistent with her complaints of significant pain and swelling in her hands. (Tr. 27) Plaintiff told Dr. Toombs that she was able to see to her own hygiene and self-care, cooked, shopped, kept house and was able to attend to all activities of daily living. (Tr. 361) In addition, she enjoyed yard work when she was physically able, and swam in her pool. <u>Id.</u> She told Dr.

10

Zuniga that her pain did not limit her activities of daily living, and that she received moderate relief with Tylenol. (Tr. 395) Plaintiff engaged in extensive daily activities, which is inconsistent with the level of pain and limitation alleged. See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004)(plaintiff attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise and visited friends and relatives); Haley v. Massanari, 258 F.3d 742, 48 (8th Cir. 2001)(plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to radio, read and visited friends and relatives); Gray v. Apfel, 192 F.3d 799, 804 (8th Cir. 1999)(plaintiff cared for himself, did household chores, drove short distance, performed other miscellaneous activities); Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999)(plaintiff cooked some meals, watered flowers around house, helped wife paint, watched television, went out for dinner, occasionally drove and occasionally visited with friends); Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997)(plaintiff dressed and bathed herself, did some housework, cooking and shopping); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1995)(daily caring for one child, driving when unable to find ride and sometimes going to grocery); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1995)(visiting neighbors, cooking own meals, doing own laundry and attending church); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995)(carrying out garbage, carrying grocery bags, driving wife to and from work inconsistent with extreme, disabling pain); Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995)(plaintiff cooked

11

breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives and attended church twice a month); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)(plaintiff lived alone, drove, shopped for groceries and did housework with some help from neighbor).

The ALJ's credibility analysis was proper. He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. E.g., Shelton v. Chater, 87 F.3d 992, 995 (8th Cir. 1996); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995).

Next, Plaintiff argues that the ALJ erred in his Step 3 conclusion that she did not meet a Listing and in failing to enunciate his Step 3 analysis. (Br. 28-34) The failure to specifically discuss a claimant's condition in the context of a Listing is not error. Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir. 1998). The ALJ noted that he had considered Plaintiff's impairments under the musculoskeletal Listings and mental disorder Listings, 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.00 and 12.00, respectively. (Tr. 22) In addition, he set out her mental health treatment, including examination and laboratory findings, at some length. (Tr. 25-29) He also rated Plaintiff's degree of functional loss in four areas of function essential to work: activities of daily living; social functioning; concentration, persistence or pace and deterioration or decompensation in work or work like settings. (Tr. 28-29) (These four areas of function are the "B" criteria of the mental disorder Listings.) The ALJ found, and the record supports the finding, that Plaintiff's mental impairments were not sufficient

to meet any Listing. Plaintiff has the burden of showing that she met a Listing. Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998). She failed to meet her burden.

Next, Plaintiff argues that the ALJ erred in his residual functional capacity determination. (Br. 34-40) Based on the evidence in the record as a whole, the ALJ found that Plaintiff retained the residual functional capacity for a significant range of light work. (Tr. 29) He found that she had a moderate (limited but satisfactory) limitation in her ability to interact appropriately with the public, supervisors and co-workers, in her ability to respond appropriately to pressures in the usual work setting and respond appropriately to changes in the routine work setting. Id. His residual functional capacity is consistent with the June, 2003, evaluation by Dr. Toombs. (Tr. 513-14) It is supported by substantial evidence.

Plaintiff's argument seeks to place the burden of proof on the Commissioner. It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity. Masterson v. Barnhart, 383 F.3d 731, 737 (8th Cir. 2004); Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). She did not meet her burden.

Finally, Plaintiff urges that the ALJ should have used the medical cessation standard in this case, rather than the five-step sequential evaluation process. (Br. 40-41) As previously noted (fn. 1), Plaintiff filed her first application for SSI in 1996. (Tr.

13

20) She was found disabled, but that disability ceased in October of 1998 due to excess family income. Id. Apparently, she did not appeal that cessation. She again filed in December of 1998; the claim was denied initially and not appealed. Id. An initial determination is binding unless the claimant requests reconsideration within the allowed time or the Social Security Administration revises the initial determination. 20 C.F.R. § 416.1405 (1999). The ALJ in this case used the proper standard in evaluating Plaintiff's claim.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. E.g., Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

There is ample evidence in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. at 401; see also Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final determination of the Commissioner be affirmed and that Plaintiff's complaint be dismissed with prejudice.

DATED this 17 day of June, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

14